# Third District Court of Appeal

## State of Florida

Opinion filed November 16, 2016.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D15-2583
Lower Tribunal No. 15-389
_____


**The Tropicana Condominium Association, Inc.,**
Appellant,

vs.

**Tropical Condominium, LLC, etc., et al.,**
Appellees.


An Appeal from the Circuit Court for Miami-Dade County, Rosa I. Rodriguez, Judge.

Heller Waldman, P.L., and Glen H. Waldman and Jason Gordon, for appellant.

Shubin & Bass, P.A., and John K. Shubin, Juan J. Farach and Katherine R. Maxwell, for appellees.

Before SUAREZ, C.J., and FERNANDEZ and SCALES, JJ.

SCALES, J.

Appellant, the defendant below, The Tropicana Condominium Association, Inc. (the "Association") appeals an order of the Miami-Dade County Circuit Court granting summary judgment to Appellee, the plaintiff below, Tropical Condominium, LLC ("Tropical"). We affirm in part and reverse in part.

## I. Facts

The 2007 Florida Legislature amended section 718.117 of the Condominium Act to facilitate the termination of condominiums. In particular, the amendment provided that a condominium could be terminated upon an approval vote of eighty percent of unit owners, so long as not more than ten percent of the unit owners opposed the termination. § 718.117(3), Fla. Stat. (2013). This amendment also provided that "[t]his section applies to all condominiums in this state in existence on or after July 1, 2007." § 718.117(1), Fla. Stat. (2013).

For economic benefits to accrue to its unit owners, the Association sought to take advantage of amended section 718.117 and to terminate the condominium status of the forty-eight unit Tropicana Condominium, located in Sunny Isles Beach, Florida. This condominium, established in 1983, was governed by a Declaration of Condominium that lacked "Kaufman"[1] language, meaning that, when referencing Florida's Condominium Act, the Declaration did not contain the words "as amended from time to time." Absent this language in a Declaration, any

---

[1] Kaufman v. Shere, 347 So. 2d 627 (Fla. 3d DCA 1977).

changes made by the Legislature to the Condominium Act subsequent to the effective date of the Declaration do not become a part of the Declaration automatically.

In 2012, the Association's board submitted to the unit owners a series of amendments to the Declaration. Among these amendments was one that responded inadequately to the 2007 amendment to section 718.117: it reduced from one hundred percent to sixty-five percent the vote required to consent to a termination of condominium. A second attempt occurred in March of 2013, which changed the consent threshold to eighty percent of unit owners, a percentage that aligned with section 718.117(3). Neither these first nor second Declaration amendments included the condition set forth in section 718.117(3), allowing for an eighty percent approval of unit owners so long as not more than ten percent did not object to termination.

A majority of Tropicana unit owners approved the Association's amendments. Section 14.5 of the Declaration, however, requires the *unanimous* approval of unit owners to alter the Declaration's termination provision.[2] The

---

[2] Section 14.5 of the Declaration provides: "This §14 cannot be amended without the consent of all Unit Owners and of all record owners of institutional Mortgages upon the Units." The termination provision is in section 14.1 of the Declaration, which provides: "The Condominium may be terminated at any time by the written consent of all of the Owners of Units in the Condominium and all Institutional Mortgages holding Mortgages on Condominium Parcels." The record reflects that the Association did not obtain approvals of mortgage holders of units.

Association had not pursued a simultaneous amendment of section 14.5's requirement of a unanimous vote.

The Association submitted additional amendments to the unit owners during this 2012-13 time period.[3] Among those was a restriction on unit ownership that limited unit owners from obtaining any kind of real estate interest in more than two units in the Tropicana Condominium. A majority of unit owners also voted to approve this amendment.

Tropical is composed of five unit owners who appear to oppose condominium termination (and who represent more than ten percent of unit owners who may object and halt a termination effort). The Association alleges that the Tropical owners are associated with the developer of an adjacent condominium tower, who does not favor a re-development of the Tropicana Condominium. In January of 2015, Tropical filed a complaint for declaratory relief, seeking a declaration that the Association's amendments are invalid because: (1) the amendments relating to condominium termination were not approved by the required unanimous vote; and (2) the prohibition on having an ownership interest in more than two units represented an unreasonable restraint on alienation.

---

[3] The Association submitted and a majority of voters approved an amendment to the Declaration's right of first refusal provision. The trial court found this amendment to be void. On appeal, the Association concedes its invalidity, and so we do not address it here.

On August 31, 2015, the trial court granted summary judgment on all counts in favor of Tropical. After first finding that the Association failed to comply with its own Declaration's requirement of unanimous consent of unit owners in order to terminate condominium status, the trial court then found that the Legislature's 2007 amendments to section 718.117 could not be retroactively applied without causing a constitutional impairment of contract. The trial court also determined that the Association's attempt to prevent a unit owner from having an ownership interest in more than two units constituted an unreasonable restraint on alienation. Accordingly, on September 10, 2015, the trial court entered final judgment on Tropical's complaint for declaratory relief. The Association's appeal ensued.

**II. Analysis**[4]

A. *The Retroactive Application of Section 718.117*

We agree with the trial court that the Association failed to amend its Declaration properly by accepting amendments that were not approved unanimously. On appeal, the Association argues that its effort to amend its Declaration was unnecessary and without import because the Florida Legislature's intent was that its 2007 amendment to section 718.117 had retroactive application to Tropicana, notwithstanding an absence of Kaufman language in its Declaration.

---

[4] The trial court's summary final declaratory judgment is based on pure questions of law. Therefore, our review of both issues on appeal is de novo. Courvoisier Courts, LLC v. Courvoisier Courts Condo. Ass'n, Inc., 105 So. 3d 579 (Fla. 3d DCA 2012).

5

The issue on appeal thus becomes whether a retroactive application of the statute exists to override the procedural defect of the Declaration amendments; and, if so, whether such retroactive application is constitutional.

Absent Kaufman language, an amendment to the Condominium Act will not have retroactive application to a condominium's Declaration if it impairs contractual obligations. Cohn v. Grand Condo. Ass'n, Inc., 62 So. 3d 1120, 1121-22 (Fla. 2011) (holding that an amendment to section 718.404(2) of the Florida Statutes, which altered voting rights for mixed-use condominium boards, constituted an impairment of contract under Article 1, section 10 of the Florida Constitution). Tropicana's Declaration, established in 1983,[5] sought to protect unit owners from any undesired effort to terminate condominium status. As a result, the condominium unit owners had a vested right in this contractual provision; indeed, the Declaration bestows this veto right on every unit owner. To what extent will impairment of this right be tolerated?

The question of tolerating impairment was examined in Pomponio v. Claridge of Pompano Condo., Inc., 378 So. 2d 774, 780 (Fla. 1979) ("To determine how much impairment is tolerable, we must weigh the degree to which a party's

---

[5] It bears noting that, in 1983, the drafters of Tropicana's Declaration had the benefit of our 1977 Kaufman decision and could have chosen to qualify the Declaration to include any subsequent revisions to Florida's Condominium Act enacted by the Florida Legislature. The drafters chose not to include such Kaufman language.

contract rights are statutorily impaired against both the source of authority under which the state purports to alter the contractual relationship and the evil which it seeks to remedy."). In Pomponio, the Florida Supreme Court adopted a three-prong balancing test to determine whether a statutory change in the Condominium Act can be applied retroactively without running afoul of Florida's Constitution. Id. at 779. The third prong is relevant in this case: "Does the law effect a temporary alteration of the contractual relationship of those within its coverage, or does it work a severe, permanent, and immediate change in those relationships irrevocably and retroactively?" Id.[6]

The Association argues that the third Pomponio prong is satisfied because the 2007 amendment to section 718.117 effects only "a temporary alteration of the contractual relationship." Id. The Association argues that section 718.117 should be retroactively applied because it expands the contractual right of condominium unit owners to terminate their condominiums; and further, the 2007 amendment increases options and creates a more equitable situation because of the difficulty of achieving unanimous consent. This argument, however, loses focus on whether the 2007 amendment *impairs* contractual rights.

---

[6] The other two prongs are: (1) "Was the law enacted to deal with a broad, generalized economic or social problem?" and (2) "Does the law operate in an area which was already subject to state regulation at the time the parties' contractual obligations were originally undertaken, or does it invade an area never before subject to regulation by the state?" Pomponio, 378 So. 2d at 779.

7

The trial court correctly determined that, irrespective of Tropical's motives, the 2007 amendment, if retroactively applied, would eviscerate the Tropical owners' contractually bestowed veto rights. According to Pomponio's third prong, the amendment would "work a severe, permanent, and immediate change" in those unit owners' safeguards against condominium termination that are built into the Declaration. Id.

Therefore, we affirm the trial court's ruling that the retroactive application of section 718.117 is impermissible, and that the Association's amendment to section 14.1 of the Declaration is invalid.

*B. The Restraint on Alienation*

On October 17, 2012, prior to the individual Tropical owners' acquisitions of their five units, the Association amended the Declaration to add a new section 13.10[7] in order to limit a unit owner from owning more than two Tropicana Condominium units at any given time. The trial court determined that this provision constituted an unreasonable restraint on alienation.

The Condominium Act allows a Declaration to establish restrictions on the transfer of units. § 718.104(5), Fla. Stat. (2013). Courts have acknowledged that condominium associations may impose restrictions on unit owners' ability to

---

[7] This amendment was approved by a majority of the Tropicana unit owners. Section 14.5's requirement of unanimous consent applies only to amendments to section 14 of the Declaration.

transfer their units, either by lease or sale. <u>Woodside Vill. Condo. Ass'n, Inc. v. Jahren</u>, 806 So. 2d 452 (Fla. 2002); <u>White Egret Condo., Inc. v. Franklin</u>, 379 So. 2d 346 (Fla. 1979). Due to the uniqueness of condominium living, condominium associations have a degree of control over the ownership of units and, concomitantly, individual owners tolerate a degree of intrusion into their property ownership. <u>Hidden Harbour Estates, Inc. v. Norman</u>, 309 So. 2d 180 (Fla. 4th DCA 1975). While a restriction on alienation of a condominium might be permissible, it still must be reasonable. <u>Id.</u> at 182; <u>Seagate Condo. Ass'n, Inc. v. Duffy</u>, 330 So. 2d 484, 486 (Fla. 4th DCA 1976) ("The test which our courts have adopted and applied with respect to restraints on alienation and use is reasonableness."). Properly enacted condominium Declaration restrictions are presumed valid, and the challenger of such restrictions has the burden to establish arbitrariness, unreasonableness or violation of law. <u>Woodside Vill. Condo. Ass'n, Inc.</u>, 806 So. 2d at 457.

We disagree with the trial court's determination that Tropical met its burden of establishing that the ownership restriction is unreasonable. The record reflects that the majority of unit owners approved the restriction after a fellow owner, who owned six units in the building, allowed all six units to go into foreclosure. Given the relatively small size of Tropicana – forty-eight units – multiple foreclosures

9

caused by a single owner's financial circumstances, could have a significant, detrimental financial impact on the Association.[8]

An additional and important consideration in our evaluation of the Association's limit of not more than two units per owner is whether such a restriction impedes the improvement or marketability of a property. Aquarian Found., Inc. v. Sholom House, Inc., 448 So. 2d 1166, 1168 (Fla. 3d DCA 1984) (citing Iglehart v. Phillips, 383 So. 2d 610 (Fla. 1980)).

Again, given the relatively small size of the Tropicana Condominium, in an area of Sunny Isles Beach that in recent decades has seen abundant development of large condominium buildings, the restriction will have a negligible effect on marketability. Tropicana unit owners are free to sell their units to the public at large (subject to the ordinary condominium association approval process), and are excluded only from selling to a tiny, almost inappreciable class of persons who already own two Tropicana units.

---

[8] Tropical argues that the two-unit ownership restriction unreasonably restricts alienability because it would impede a single lender from underwriting mortgage loans for more than two Tropicana condominium units. The definition of "Unit Owner" in section 2 of the Declaration provides: "Unit Owner . . . means the owner of a Condominium Parcel (including the Developer when applicable)." Despite the broadness of this definition, in light of the Association's intent in adding section 13.10 to its Declaration, we conclude that, for the purposes of section 13.10, a unit owner does not include a foreclosing mortgage holder.

10

For these reasons, we reverse the trial court's ruling that section 13.10 of the Declaration unreasonably restrains alienation of Tropicana units and remand to the trial court for entry of an amended judgment consistent herewith.

**III. Conclusion**

For the reasons stated above, we affirm the trial court's invalidation of the Association's amendment to section 14.1 of the Declaration. We reverse the trial court's ruling that declared the Association's amendment to section 13.10 of the Declaration an unreasonable restraint on alienation.

Affirmed in part, reversed in part. Remanded with instructions.